# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 08-CR-30-LRR |
| vs. | **ORDER** |
| MISHAN BRADFORD, | |
| Defendant. | |

## I. INTRODUCTION

The matter before the court is the sentencing of Defendant Mishan Bradford.

## II. RELEVANT PRIOR PROCEEDINGS

On June 10, 2008, a federal grand jury returned a one-count Indictment (docket no. 1) against Defendant. Count 1 of the Indictment charged Defendant with Possession of a Firearm While an Unlawful User of Controlled Substances, in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(2) and 924(a)(2). Count 1 alleged Defendant unlawfully used marijuana and crack cocaine while in possession of a 12-gauge shotgun. The Indictment also contains a forfeiture allegation.

On August 19, 2008, Defendant appeared before a United States Magistrate Judge and pled guilty to Count 1 of the Indictment. On September 2, 2008, the undersigned accepted Defendant's guilty plea.

On October 30, 2008, the United States Probation Office ("USPO") prepared Defendant's Presentence Investigation Report ("PSIR"). The government and Defendant objected to the PSIR. On November 19, 2008, the USPO revised the PSIR.

On November 25, 2008, a Final Order of Forfeiture (docket no. 35) entered. Defendant forfeited his shotgun to the government, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c).

On December 19, 2008, the government filed a Sentencing Memorandum (docket no. 37). On December 24, 2008, Defendant filed a Sentencing Memorandum (docket no. 43). On January 6, 2009, Defendant filed a Supplemental Sentencing Memorandum (docket no. 45).

A sentencing hearing is presently scheduled for February 11, 2009, at 8:00 a.m., in Cedar Rapids, Iowa.

### III. PRIOR FELONY ELUDING CONVICTION

One of the issues in Defendant's sentencing is whether Defendant's base offense level under the advisory Sentencing Guidelines is **14** or **20**. Defendant's base offense level is **20** if he "committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence . . . ." USSG §2K2.1(a)(4)(A) (2007).[1] Otherwise, Defendant's base offense level is **14**.[2]

On April 12, 2004, Defendant was convicted of Fleeing or Attempting to Elude a Police Officer ("Fleeing"), in violation of Wis. Stat. § 346.04(3). It is undisputed that Defendant sustained his Fleeing conviction prior to committing the instant offense. It is also undisputed that Defendant's Fleeing conviction is a "felony" for purposes of USSG §2K2.1(a)(4)(A), because it is punishable by more than one year of imprisonment.[3] *See* USSG §2K2.1, cmt. (n.1). The fighting issue is whether Fleeing is "a crime of violence."

---

[1] The parties agree the 2007 edition of the advisory Sentencing Guidelines Manual applies to Defendant's sentencing.

[2] The USPO later recommends the court apply the cross-reference at §2K2.1(c)(1)(A) to §2A2.1 (Assault With Intent to Commit Murder; Murder) and increase Defendant's base offense level to **27**. This is an evidentiary issue the court will decide at the hearing.

[3] Fleeing is generally a Class I felony under Wisconsin law. Wis. Stat. § 346.17(3)(a). It is punishable by a maximum of 42 months of imprisonment. *Id.* § 939.50(3)(i).

"'Crime of violence' has the meaning given that term in §4B1.2(a) and Application Note 1 of the Commentary to §4B1.2." USSG §2K2.1, cmt. (n.1). Section 4B1.2(a) provides the following definition of "crime of violence":

> (a) The term "crime of violence" means any offense . . . that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG §4B1.2. "'Crime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling." *Id.* §4B1.2, cmt. (n.1).

In deciding whether Fleeing is a crime of violence, the court "consider[s] the offense generically, that is to say, [the court must] examine it in terms of how the law defines the offense and not in terms of how an individual offender may have committed it on a particular occasion." *Begay v. United States*, 128 S. Ct. 1581, 1584 (2008) (referencing the categorical approach of *Taylor v. United States*, 495 U.S. 575 (1990) and *Shepard v. United States*, 544 U.S. 13 (2005)). When the court must determine which part of a multi-pronged statute a defendant violated, judicial fact-finding with respect to such prior conviction "is limited to the terms of the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26 (endorsing a modified categorical approach). Further, the court is "bound by cases interpreting whether an offense is a crime of violence under the [advisory Sentencing] Guidelines as well as cases interpreting whether an offense

is a violent felony under the Armed Career Criminal Act" ("ACCA"), 18 U.S.C. § 924(e)(2)(B), because the two definitions are nearly identical. *United States v. Williams*, 537 F.3d 969, 971-72 (8th Cir. 2008); *United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992) (Breyer, C.J.).[4]

The statutory language for Fleeing is set forth in Wis. Stat. § 346.04(3). It provides:

> **346.04. Obedience to traffic officers, signs and signals; fleeing from officer**
>
> * * *
>
> (3) No operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle, shall knowingly flee or attempt to elude any traffic officer by willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians, nor shall the operator increase the speed of the operator's vehicle or extinguish the lights of the vehicle in an attempt to elude or flee.

Wis. Stat. § 346.04(3). As construed by the Wisconsin state courts, the adverb "knowingly" in § 346.04(3) extends to "flee" and "attempt to elude" but not "interfere with or endanger." *State v. Sterzinger*, 649 N.W.2d 677, 681 (Wis. Ct. App. 2002); *State v. Carter*, No. 2006AP680-CR, 2006 WL 3783134, *4 (Wis. Ct. App. Dec. 21, 2006). To sustain a conviction under § 346.04(3), the prosecution must prove the following three elements:

> (1) an operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle,
>
> (2) knowingly flees or attempts to elude any traffic officer,

---

[4] Section 4B1.2 substitutes "burglary of a dwelling" for "burglary" in the ACCA's list of example crimes.

> (3) by wilful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians OR increase the speed of the operator's vehicle OR extinguish the lights of the vehicle in an attempt to elude or flee.

*Sterzinger*, 649 N.W.2d at 680-81 & 680 n.2 & 681 n.3. The third element has three alternatives; the prosecution need only prove one of them to sustain a conviction. *Id.*[5]

Fleeing does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." USSG §4B1.1(a)(1). Fleeing neither is "burglary of a dwelling, arson, or extortion" nor "involves use of explosives" (collectively, "the example crimes"). *Id.* §4B1.1(a)(2). Fleeing only qualifies as a crime of violence, then, if it "otherwise involves conduct that presents a serious potential risk of physical injury to another." That is, the fighting issue is whether Fleeing falls within the ambit of the second clause of §4B1.2(a)(2), the so-called "otherwise" clause. *See, e.g., Williams*, 537 F.3d at 972.

While the Eighth Circuit Court of Appeals has not had the opportunity to analyze § 346.04(3), the Seventh Circuit Court of Appeals has held that a conviction for Fleeing categorically qualifies as a "violent felony" or "crime of violence." *See, e.g., United States v. Howze*, 343 F.3d 919, 921-22 (7th Cir. 2003) (Easterbrook, J.). In *Howze*, the Seventh Circuit Court of Appeals held a Fleeing conviction falls under the "otherwise" clause. *Id.* The Court reasoned:

> Howze insists that one can violate Wis. Stat. § 346.04(3) without creating a "serious potential risk of physical injury to another[.]" In his view, a motorist who disobeys police instructions and increases speed in an attempt to flee does not threaten the safety of bystanders so long as he does not exceed

---

[5] Because the government does not intend to offer any *Shepard*-type evidence to prove under which of the three alternatives Defendant was convicted, the court must determine whether all three prongs qualify as a crime of violence.

> the speed limit or violate some other law along the way. We
> [have] rejected a similar argument in [ a prior case]. [E]scape
> from custody always is a "crime of violence". . . . . Every
> other circuit that has addressed this issue has come to the same
> conclusion.
>
> Flight to avoid apprehension is one means through which the
> risk of escape may be realized. When the crime is flight to
> avoid apprehension, what is only a risk for escape becomes a
> certainty. Bystanders are in particular jeopardy. Collisions
> between fleeing vehicles and pedestrians or others who get in
> the way are common. Thus, if all escapes are violent crimes,
> all flights to avoid arrest must be violent crimes. Indeed, flight
> may be even more dangerous than escape, because many
> escapes do not entail flight to avoid capture—but all flights
> involve that risk-creating conduct. Howze observes that the
> custodial status of a person fleeing from the police is different
> from that of a prisoner escaping from a place of incarceration.
> True enough, but not very helpful. To distinguish [prior cases]
> on the basis of the defendant's custodial status, Howze would
> have to present evidence that flight after custody (that is,
> escape) is more likely to result in a "serious potential risk of
> physical injury to another" than is flight before custody (the
> crime defined by Wis. Stat. § 346.04(3)). Howze has not
> come up with any evidence along these lines, and we are not
> aware of any.

*Id*. (citations omitted).

The Eighth Circuit Court of Appeals has reached the same conclusion about a similar Oregon statute. *See, e.g., United States v. McKendrick*, 423 F.3d 803, 809-10 (8th Cir. 2005) (construing Or. Rev. Stat. § 811.540). Writing for the Eighth Circuit Court of Appeals, Judge Gruender described the dangers of fleeing a police officer in a vehicle as follows:

> A person commits the crime of fleeing or attempting to elude
> a police officer if, while operating a motor vehicle, he
> knowingly flees or attempts to elude an identifiable police

6

officer after the officer has just given a visual or audible signal to stop. O.R.S. § 811.540. The conduct associated with the commission of felony fleeing calls to mind the risks associated with escape and automobile theft. In *United States v. Nation*, 243 F.3d 467 (8th Cir. 2001), we recognized that every escape, even the most peaceable escape, "'is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so.'" *Id.* at 472 (quoting *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir.1994)). This is because "an escapee is likely to possess a 'variety of super-charged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees.'" *Id.* (quoting *Gosling*, 39 F.3d at 1142). There is little doubt that felony fleeing involves, at the very least, the same risks of physical injury to another as a walk-away escape.

In reality, the dangerous circumstances surrounding a person's attempt to flee from law enforcement are compounded by the person's operation of a motor vehicle. The desperate situation that a person fleeing from law enforcement may find himself in is, in many ways, reminiscent of the serious potential risk of injury surrounding an automobile theft. As a person is in flight from custody, his vehicle has the potential to become a deadly or dangerous weapon. *United States v. Sun Bear*, 307 F.3d 747, 753 (8th Cir. 2002). Further, "[u]nder the stress and urgency which will naturally attend his situation, [a person fleeing from law enforcement] will likely drive recklessly and turn any pursuit into a high-speed chase with the potential for serious harm to police or innocent bystanders." *Id.* Considering the combined risks associated with felony fleeing, we conclude that the district court properly held that O.R.S. § 811.540 is a crime of violence as defined by § 4B1.2. *See United States v. Rosas*, 410 F.3d 332, 334 (7th Cir. 2005) (per curiam) ("[T]he Wisconsin statute at issue, fleeing a police officer[,] is categorically a crime of violence."); *United States v. Martin*, 378 F.3d 578, 582 (6th Cir. 2004) (holding that third-degree fleeing or eluding is a crime of violence because of the risk of injury to pedestrians, other drivers and pursuing

> officers created by a person fleeing in an automobile); *see also United States v. Albritton*, 135 Fed.Appx. 239, 243 (11th Cir. 2005) (unpublished per curiam) (affirming district court's holding that aggravated fleeing and eluding is a crime of violence).

*McKendrick*, 423 F.3d at 809.

Defendant argues that cases such as *Howze* and *McKendrick* are no longer good law after *Begay*. In *Begay*, the Supreme Court analyzed the "otherwise" clause in the ACCA and held that drunk driving was not a "violent felony." 128 S. Ct. at 1585-86 (discussing N.M. Stat. Ann. §§ 66-8-102(A) *et seq*.).[6] The Supreme Court held that, for a prior felony offense to fall within the scope of the "otherwise" clause, such offense must (1) "pose a similar degree of risk of physical injury as the example crimes" and (2) "be similar in kind to the example crimes." *Williams*, 537 F.3d at 972 (citing *Begay*, 128 S. Ct. at 1585-86). "For a crime to be similar in kind to the example crimes, it should typically involve 'purposeful, violent, and aggressive conduct.'" *Id*.

The court holds *Begay* does not undermine cases such as *Howze* and *McKendrick*. Fleeing poses a similar degree of risk of physical injury as the example crimes and is similar in kind to the example crimes. Fleeing is purposeful, violent and aggressive. A vehicle can be a powerful weapon in the hands of a criminal. Fleeing is a far cry from the drunk driving statute at issue in *Begay* or other crimes that "impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all." *Begay*, 128 S.Ct. at 1586-87. It is significantly different from the Missouri statutes of auto theft by deception, auto theft without consent and auto tampering at issue in *Williams*. *Cf. Williams*, 537 F.3d at 974-76 (holding that auto theft by deception, auto

---

[6] The New Mexico statute criminalized the operation of a motor vehicle under the influence of alcohol or with a blood alcohol concentration of .08 or more. N.M. Stat. Ann. §§ 66-8-102(A), (C).

theft without consent and auto tampering are not crimes of violence and abrogating a number of Eighth Circuit Court of Appeals cases, including *United States v. Sun Bear*, 307 F.3d 747 (8th Cir. 2002)).[7]

Section 346.04(3) criminalizes only a particularly dangerous and purposeful sort of fleeing. The prosecution must necessarily prove the fleeing motorist acted so wilfully and wantonly that he (1) "interfere[s] with or endanger[s] the operation of [a] police vehicle, or the traffic officer or other vehicles or pedestrians"; (2) "increase[s] the speed of [his] vehicle" or (3) "extinguish[es] the lights of the vehicle in an attempt to elude or flee." Wis. Stat. § 346.04(3). All three alternatives form a purposeful, violent and aggressive act.

Consistent with these conclusions about Fleeing, the Seventh Circuit Court of Appeals has adhered to *Howze* after *Begay*. *See, e.g., United States v. Spells*, 537 F.3d 743, 752-73 (7th Cir. 2008) (construing similar Indiana statute). The Seventh Circuit Court of Appeals emphasized that the prosecution had to prove the defendant knowingly fled a police officer. *Id.* at 752. Such requirement "ensur[es] that the law is only violated when an individual makes a 'purposeful' decision to flee from an officer." *Id.* "Additionally, such conduct, when committed with a vehicle, is inherently aggressive . . . ." *Id.* The court cited evidence to prove that persons who flee with firearms are more likely to use those firearms. *Id.* (citation omitted). After *Begay*, statutes such as § 346.04(3) must be distinguished from so-called "failure to stop" statutes, which criminalize unintentional conduct. *Compare United States v. West,* 550 F.3d 952, 965 (10th Cir. 2008) (fleeing a qualifying predicate), *with United States v. Roseboro*, 551 F.3d

---

[7] *Williams* itself may rest upon a shaky foundation. Four members of the Eighth Circuit Court of Appeals have expressed grave concerns about *Williams* and voted to rehear the case en banc. *See United States v. Williams*, No. 07-2679, 2008 WL 4767458, *4 (8th Cir. Nov. 3, 2008) (Colloton, J., dissenting from denial of rehearing en banc). A fifth member of the court did not take any part in the consideration of the case. *See id.*

9

226 (4th Cir. 2009) (failure to stop not a qualifying predicate and remanding).

The court finds support for its holding in *Chambers v. United States*, 129 S. Ct. 687 (2009), the Supreme Court's most recent foray into the "mire" of the ACCA. *Chambers*, 129 S. Ct. at 694 (Alito, J., concurring). In *Chambers*, the Supreme Court held that failing to report or return to law enforcement custody was not a "violent felony." 129 S. Ct. at 693. The Court characterized failing to report as "a form of inaction, a far cry from the 'purposeful, violent, and aggressive conduct' potentially at issue when an offender" commits burglary, arson, extortion or uses explosives. *Id.* at 692. The court noted that, "[w]hile an offender who fails to report must of course be doing *something* at the relevant time, there is no reason to believe that the *something* poses a serious potential risk of physical injury." *Id.* (emphasis in original). And the Court distinguished a mere failure to report from an escape from custody; the Court stressed that "[t]he behavior that underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody." *Id.* at 691. The court pointed to evidence in the record that supported its suppositions about dangerousness and thus buttressed its conclusions. *Id.* at 692-93.

Here, Fleeing is more akin to actively escaping from custody than passively failing to report or return to custody. Defendant's prior felony conviction for Fleeing thus falls within the scope of the "otherwise clause" and is a "crime of violence." *Cf. United States v. Pearson*, No. 08-1716, 2009 WL 211940, *1-*3 (8th Cir. Jan. 30, 2009) (holding escape from custody still a violent felony). The acts involved in Fleeing are active, aggressive, purposeful and violent.

Accordingly, the court shall hold that Defendant's base offense level is **20**. USSG §2K2.1(a)(4)(A).

### IV. DISPOSITION

At Defendant's sentencing hearing, the court shall hold that Defendant's base

offense level is **20**, pursuant to USSG §2K2.1(a)(4)(A).

    **IT IS SO ORDERED.**

    **DATED** this 3rd day of February, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA